**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

WINDY COVE, INC., a California corporation; STAFFING AND MANAGEMENT GROUP, INC, a California corporation; HB FUEL, INC., a California corporation,

*Plaintiff-counter-defendants - Appellants*,

v.

CIRCLE K STORES INC., a Texas corporation,

*Defendant-counter-claimant - Appellee*,

KAZMO, LLC; SUN RISE PROPERTY, LLC; MOHAMMAD BAHOUR; HAMID KALHOR,

*Counter-defendants - Appellants*.

No. 23-2679

D.C. No. 3:21-cv-01416-MMA-DEB

OPINION

Appeal from the United States District Court for the Southern District of California Michael M. Anello, District Judge, Presiding

Argued and Submitted November 8, 2024
Pasadena, California

Filed December 3, 2024

Before: Barrington D. Parker[*], Andrew D. Hurwitz, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[**]

### California Commercial Code

The panel affirmed the district court's summary judgment in favor of Circle K Stores Inc. in an action by gasoline dealers Windy Cove, Inc. and others (collectively, "Windy Cove") alleging that the prices of gasoline sold to them by Circle K, under an exclusive distributorship contract, were not set in good faith.

California Commercial Code § 2305(2) provides that when a contract grants a party the power to fix the price, the party must do so "in good faith." Uniform Commercial Code § 2-305 defines good faith as the observance of reasonable commercial standards of fair dealing in the trade, and includes a "safe harbor" provision, providing that "in the

---

[*] The Honorable Barrington D. Parker, United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

normal case a posted price or a future seller's or buyer's given price, price in effect, market price, or the like satisfies the good faith requirement."

The prices charged by Circle K were presumptively set in good faith because the contract had a "price in effect" term. The safe harbor's presumption can only be rebutted by evidence that prices were set with objective bad faith, which is established by showing that the prices were either (1) discriminatory or (2) not commercially reasonable. A price "within the range" of those charged by the seller's competitors is commercially reasonable.

The panel held that the district court was correct in finding that Circle K's prices were "in the range" of those charged by its competitors because it is undisputed that Circle K's prices were lower than at least one refiner. Windy Cove thus failed to rebut the presumption that Circle K set its prices in good faith and summary judgment was therefore appropriate.

## COUNSEL

Kenneth P. Roberts and Stuart Cohen, K.P. Roberts & Associates, Woodland Hills, California, for Plaintiffs-Counter-Defendants-Appellants.

Alissa R. Pleau-Fuller, Buchalter APC, Sacramento, California; Matthew Covington, Buchalter APC, San Francisco, California; Efrat M. Cogan, Buchalter APC, Los Angeles, California; Chandra Roam, Buchalter APC, San Diego, California; for Defendants-Counter-Claimants-Appellees.

# OPINION

HURWITZ, Circuit Judge:

This case involves a claim by retail gasoline stations that the prices of gasoline sold to them by Circle K Stores Inc., under an exclusive distributorship contract, were not set in good faith. Because the contract had a "price in effect" term, under Uniform Commercial Code ("U.C.C.") § 2-305(2), codified as California Commercial Code § 2305(2), the prices charged by Circle K were presumptively set in good faith. The retailers argue that the presumption was rebutted because Circle K sets prices through a non-industry-standard formula and its prices, although lower than those charged by at least one refiner, exceed those charged by other wholesalers.

## BACKGROUND

Windy Cove, Inc., HB Fuels, Inc., and Staffing and Management Group, Inc. (collectively "Windy Cove"), are gasoline dealers who own Mobil-branded stations in southern California. In 2012, as required by the agreement under which the dealers purchased their gas stations from ExxonMobil, they entered into a 15-year exclusive fuel supply agreement with Circle K. Circle K purchases the gasoline it sells to Windy Cove and other dealers from ExxonMobil, a refiner. The agreement between Circle K and Windy Cove, governed by California law, provided that the "price per gallon to be paid by Purchaser shall be Seller's price in effect at the time and place of delivery to dealers of the same class and in the same trade area as Purchaser."

California Commercial Code § 2305(2) provides that when a contract grants a party the power to fix the price, the

party must do so "in good faith." Windy Cove claims that Circle K did not set its prices for gasoline in good faith because (1) Circle K relied upon a non-industry-standard pricing formula to determine the prices, and (2) its prices were higher than that of another wholesaler. It was uncontroverted, however, that the prices Circle K charged to Windy Cove were below those charged to retailers by at least one refiner.

The district court granted summary judgment to Circle K. We have jurisdiction over Windy Cove's timely appeal under 28 U.S.C. § 1291. Reviewing the summary judgment de novo, *see Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021), we affirm.

## DISCUSSION

### I.

Circle K was required to set the prices of the gasoline it sold Windy Cove "in good faith." Cal. Com. Code § 2305(2). The U.C.C. defines good faith in this context as the "observance of reasonable commercial standards of fair dealing in the trade." U.C.C. § 2-305, cmt. 3; *see also E.S. Bills, Inc. v. Tzucanow*, 38 Cal. 3d 824, 833 (1985) ("Good faith in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.") (cleaned up).

"[T]o minimize judicial intrusion into the setting of prices under open-price-term contracts," *Shell Oil Co. v. HRN, Inc.*, 144 S.W.3d 429, 433 (Tex. 2004),[1] the U.C.C.

---

[1] When interpreting the California Commercial Code, California courts look to other jurisdictions' decisions in the absence of instructive California precedent. *See, e.g.*, *Carrau v. Marvin Lumber & Cedar Co.*, 93 Cal. App. 4th 281, 290–91 (2001).

includes a "safe harbor" provision, providing that "in the normal case a posted price or a future seller's or buyer's given price, price in effect, market price, or the like satisfies the good faith requirement," U.C.C. § 2-305, cmt. 3 (cleaned up). The parties agree that the Circle K-Windy Cove agreement was a "price in effect" contract. Thus, to establish an absence of good faith Windy Cove is required to show that this is not "the normal case."

The U.C.C. does not define "the normal case." And although some reported decisions take somewhat differing approaches to the issue, *compare, e.g.*, *Nanakuli Paving & Rock Co. v. Shell Oil Co.*, 664 F.2d 772, 806 (9th Cir. 1981) (applying Hawaii law), *with HRN*, 144 S.W.3d at 434–35 (applying Texas law), under the majority rule, which the parties agreed below would apply, the safe harbor's presumption can only be rebutted by evidence that prices were set with objective bad faith. Objective bad faith is established by showing that the price was either (1) discriminatory or (2) not commercially reasonable. *See, e.g.*, *HRN*, 144 S.W.3d at 434. Because Windy Cove does not assert price discrimination, the only issue is whether Circle K's prices were commercially unreasonable. Windy Cove bears the burden of showing unreasonableness. *See Tom-Lin Enters., Inc. v. Sunoco, Inc.*, 349 F.3d 277, 282 (6th Cir. 2003).

## A.

Windy Cove argues that Circle K's prices were commercially unreasonable because they were set by a non-industry standard pricing formula. But even assuming that there is a genuine issue of fact about Circle K's adherence to industry standards, any deviation is not material to the determination of commercial reasonableness. Although

some courts have found a deviation from industry standards relevant to the issue, *see, e.g.*, *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 290 (4th Cir. 1998),[2] that is a distinctly minority view. Most courts determine commercial reasonableness based on the actual price charged, not on *how* that price was calculated. *See, e.g.*, *HRN*, 144 S.W.3d at 434 (collecting cases). And "the majority of decisions suggest that a commercially reasonable [] price, that is, one within the range of [] prices charged by other [sellers] in the market, is a good faith price under section 2.305 absent some evidence that the [seller] used pricing to discriminate among its purchasers." *Id*. Under the majority approach, a "price might be reasonable although not set pursuant to reasonable commercial standards of fair dealing." *TCP Indus., Inc. v Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir. 1981) (cleaned up).

The majority approach is consistent with the limited California precedent on the topic. *See Exxon Corp. v. Superior Ct.*, 51 Cal. App. 4th 1672, 1687 (1997) ("Exxon presented evidence that its [] prices fell within the range of [] prices charged by other major oil companies to their dealers. This is all that is required.") (cleaned up). And it is faithful to the purposes of U.C.C. § 2-305. "[T]he chief concern of the UCC Drafting Committee in adopting § 2-305(2) was to prevent discriminatory pricing," not to mandate a particular price formula. *Casserlie v. Shell Oil Co.*, 902 N.E.2d 1, 5 (Ohio 2009) (cleaned up). Requiring uniform approaches to setting prices would effectively "eviscerate the safe harbor" and lead "to drawn-out litigation

---

[2] *See also Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1308, 1322 (S.D. Fla. 1999) (applying Florida law); *Nanakuli*, 664 F.2d at 805 (applying Hawaii law).

even if the prices ultimately charged were undisputedly within the range of those charged throughout the industry." *Id.* at 5 (cleaned up). Circle K's use of a non-industry standard pricing formula thus does not render its prices commercially unreasonable.[3]

### B.

Under the majority rule, a price "within the range" of those charged by the seller's competitors is commercially reasonable. *HRN*, 144 S.W.3d at 434. Windy Cove argues that Circle K's pricing does not fit under this rubric. We disagree.

The critical dispute is over identifying Circle K's competitors for the purposes of this analysis. Windy Cove argues that Circle K is only in competition with other wholesale distributors, and not refiners. Circle K argues that it competes with all suppliers of gasoline to retail dealers, including refiners. The relevant universe of competitors makes a difference, as there is evidence that Circle K's prices exceeded those charged by other wholesale distributors, but it is undisputed that Circle K's prices were lower than prices charged by at least one refiner.

Case law on how to determine a seller's competitors is sparse. But the California Supreme Court has held that

---

[3] Windy Cove also challenges the district court's order excluding its expert's testimony about (1) the price Circle K pays for gasoline, and (2) the method in which Circle K set the price for gasoline sold to Windy Cove. Because only the price charged, not how it is calculated, is relevant to the good faith analysis, the district court did not abuse its discretion in excluding this testimony. For the same reason, the district court did not abuse its discretion in denying Windy Cove's motion seeking to compel Circle K to produce information on the price Circle K pays to acquire gasoline from ExxonMobil.

pricing data from refiners *can* be relevant to a § 2305(2) analysis when the seller-defendant is a wholesaler. *See E.S. Bills*, 38 Cal. 3d at 833. This approach reflects the realities of the gasoline market. Because gasoline is a fungible commodity, Circle K is effectively in competition with everyone who sells gasoline to dealers, including refiners. It is not the market for gasoline that prevents Windy Cove from purchasing gasoline from refiners (or from any other wholesaler), but rather only its exclusive agreement with Circle K. Indeed, Windy Cove's expert agreed that Circle K's competitors include refiners because "[i]n today's environment, they are all competitors." A contrary conclusion would lead to an absurd result; it would mean that a sole wholesaler in a market would not be able to show that his price was in the range of those charged by competitors and thus be precluded from enjoying the safe harbor's protection, even if the wholesaler's price was in the range of the prices charged by every refiner in the market.

It is undisputed that Circle K's prices were lower than at least one refiner. The district court was therefore correct in finding that Circle K's prices were "in the range" of those charged by its competitors.[4] Windy Cove thus failed to rebut

---

[4] Citing *Havird*, 149 F. 3d at 286, Windy Cove argues "in the range" means "in the middle of the pack." But *Havird* simply cites evidence that the defendant-seller's price was in the "middle of the pack," and does not attempt to redefine what "in the range" means. *Id*. at 290. Windy Cove cites no case finding that a price less than that charged by another competitor in the relevant market is not "in the range" for purposes of the § 2-305 safe harbor.

the presumption that Circle K set its prices in good faith and summary judgment was therefore appropriate.[5]

   We **AFFIRM** the judgment of the district court.

---

[5] Windy Cove concedes that its second and third causes of action rise or fall with its § 2305(2) claim. For the reasons set forth in this opinion, the district court also did not err in granting Circle K partial summary judgment on its counterclaim for a declaratory judgment that "Circle K has set its pricing in good faith."